## THOMAS PICKING vs. THE STATE OF MARYLAND.

SALARIES OF CERTAIN STATE OFFICERS LIMITED TO $3,000 PER ANNUM; ART. 10, SEC 1, OF THE CONSTITUTION OF 1851,—was designed to fix the rate of compensation of the officers mentioned at a maximum of $3,000 a year, and to limit them to a ratable part of that "yearly sum" according to the period or portion of the year during which they may hold the office; and to require them to pay into the treasury the excess received beyond such rate of compensation.

APPEAL from the Circuit Court for Frederick county.

This action was brought by the State of Maryland against the appellant, to recover the sum of six hundred and sixty-six dollars and sixty-two cents, claimed to be an excess of fees received by him as one of the flour inspectors of the city of Baltimore over and above the ratable proportion of the annual salary of his office, for the fraction of the unexpired year of his predecessor in office. The facts of the case are more fully stated in the opinion of this Court. The judgment of the Court below, (NELSON, J.,) was for the State, and the defendant appealed.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and WEISEL, J.

*G. Eichelberger* for the appellant.

The appellant asks for a reversal of the judgment for the following reasons:

By the provisions of the 14th section of Article 2 of the late (section 16 of Article 2 of the present) Constitution, the official year of all civil officers appointed by the Governor, commences with the first Monday of May ensuing their appointment, and must terminate on the first Monday of the following May.

The provision of section 1 of Article 10 of the late (section 1, Article 12 of the present) Constitution, that every officer of the State, the entire amount of whose pay or compensa-

tion received for the discharge of his official duties shall exceed the yearly sum of three thousand dollars, shall keep and render to the treasurer a yearly account of the moneys so received by him, and shall yearly pay over to the treasurer such excess over the sum of three thousand dollars as he may receive, has reference to the official year of the several officers, and, it is submitted, can have reference to no other. If otherwise, and the reference be to the year from the day the officer enters on the discharge of his duties, then, it is submitted, that in this case, the account does not embrace and cover the receipts for the year from the qualification of the appellant, and that this action cannot be maintained, and the judgment must be reversed. If, however, the view be correct, that the reference is to the official year, then it is submitted that, as the appellant's official year expired on the first Monday of May, 1864, he had not received more than $3,000 during the official year, and there was no surplus in his hands to be paid to the treasurer.

The provision of the Constitution is, that the pay or compensation of the officer shall not exceed the *yearly* sum of $3,000, not the *monthly* sum of $250, not the quarterly sum of $750, but the *yearly* sum of $3,000, referring to the official year, as suggested above. And we submit that this view is not without authority to sustain it. *Wentworth vs. The United States*, 2 *Story Rep.*, 452. *Brightly's Digest*, 327, 329, *Acts of Congress. United States vs. McCarty*, 1 *McLean's Rep.*, 306. *United States vs. Edwards*, 1 *Mc-Lean's Rep.*, 467.

*A. Randall*, Attorney General, for the State, argued that the judgment should be affirmed, because :

1st. That as by the 1st section of the 20th Article of the Constitution of 1850, [the same substantially as section 1 of Article 12 of the present Constitution,] every officer of

this State, the Governor excepted, the amount of whose pay or compensation received for the discharge of his official duties shall exceed the yearly sum of three thousand dollars, shall pay over to the treasurer the amount of such excess; so, also, if the pay or compensation received while in the discharge of their duties, for any part of the year, shall exceed the proportion of $3,000, which that part of the year bears to the entire year, the officer so receiving it shall pay over to the treasurer the amount of such proportional excess.

2nd. The appellant was appointed an assistant inspector of flour for the city of Baltimore, and qualified and entered on the duties of his office on the 17th August 1863, to fill a vacancy until the 1st of May, 1864, by Art. 2, sec. 14, of the Constitution of 1850, (new Constitution, Art. 2, sec. 16.) He received, while rendering service in his office, fees to the amount of $2,791.60; whereas, his pay and compensation for that period of time, at the rate of $3,000 per annum, was only $2,125, leaving him in debt to the State the sum of $666.60, for which the judgment of the Court was rightfully rendered against him. *Public Local Code, Art. 4, sec. 330, and seq., page* 216. *Public Local Code, Art. 4, sec.* 340.

BARTOL, J., delivered the opinion of this Court.

The question for decision in this case, arises upon an agreed statement of facts, which shows that the appellant was appointed assistant flour inspector in Baltimore city, (*vice* S. D. Walker, deceased,) on the 31st day of July, 1863; that he qualified and entered on the discharge of his duties on the 17th day of August, 1863; that between that day and the 1st day of May, 1864, he received from the fees of his office the sum of $2,791.62; and that he has paid no part of that sum into the treasury.

The object of the suit is to recover the excess received by

the appellant, beyond the rate of $3,000 *per annum*, amounting, according to the account filed with the declaration, to the sum of $666.62, for which the judgment was rendered below. The decision of the case turns upon the true construction of sec. 1, Article 10 of the Constitution of 1851, which is in these words:

"Section 1. Every officer of this State, the Governor excepted, the entire amount of whose pay or compensation received for the discharge of his official duties shall exceed the yearly sum of three thousand dollars, shall keep a book, in which shall be entered every sum or sums of money received by him or on his account as a payment or compensation for his performance of official duties, a copy of which entries in said book, verified by the oath of the officer by whom it is directed to be kept, shall be returned yearly to the Treasurer of the State for his inspection and that of the General Assembly of Maryland; and each of such officers, when the amount received by him for the year shall exceed the sum of three thousand dollars, shall yearly pay over to the treasurer the amount of such excess by him received, subject to such disposition thereof as the Legislature may deem just and equitable. And any such officer failing to comply with the said requisition, shall be deemed to have vacated his office, and be subject to suit by the State for the amount that ought to have been paid into the treasury."

The appellant was an officer embraced within this provision; the mode of his appointment and the tenure of his office were regulated by the 14th section of the 2d Article of the Constitution. And his duties and mode of compensation were prescribed by the 4th Article of the Code of Public Local Laws, secs. 330 to 353. By sec. 343, his compensation was secured by allowing *one cent* for each barrel or half barrel of flour inspected.

The primary object and design of these provisions of the Code was to secure the public against imposition, by pro-

viding competent officers to inspect, and mark the quality of flour before it is offered for sale. In providing the mode of compensation to the inspector, the Legislature intended to impose the expense of inspection upon the consumer, for whose benefit the law was passed.

Inasmuch as the amounts received for inspection might exceed what would be a fair and reasonable compensation to the officer, section 1, Article 10 of the Constitution was adopted, the design of which was to fix the maximum of his compensation, at the yearly sum of $3,000, and to increase the public revenue, by requiring the excess to be paid into the treasury.

In a case where an officer holds for a whole official year, that is from the first of May. No doubt could exist as to the meaning of the constitutional provision. But in a case like the present, where the incumbent holds the office for a part of the year only, the question arises whether there must be an apportionment of the whole yearly compensation fixed by the Constitution ; so as to limit the officer to a *pro rata* sum, or allowance which would be equivalent to $3,000 per annum.

This is not provided for in express terms ; nothing is said about an apportionment or ratable compensation to the officer who holds for less than a year. And the appellant contends that without such express provision, there is no legal right to make an appointment; that if the officer has in fact received from the fees of his office no more than $3,000, he is entitled to retain it, no matter how small a part of the year he may have held the office.

The effect of such a construction to defeat the objects of the constitutional provision, and deprive the State of the revenue intented to be secured, is very well stated by the judge of the Circuit Court in his opinion sent up with the record.

The counsel for the appellant has referred in his argu-

ment to several decisions by the Courts of the United States, which seem at first view to warrant the construction, he puts upon the constitutional provision. They are the cases of *Wentworth vs. The United States,* 2 *Story Rep.,* 452. *United States vs. McCarty,* 1 *McLean's Rep.,* 306. *United States vs. Edwards,* 1 *Idem.,* 467. *United States vs. Pierce,* 2 *Sumner Rep.,* 575. *United States vs. Dixon,* 15 *Peters Rep.,* 141. We have given those cases a most careful examination, and consider that besides the weight and authority they are justly entitled to by reason of the great learning and ability of the Courts pronouncing them, the decisions are supported by good reason and sound principles of construction. They involved the construction of several acts of Congress regulating the fees, and limiting the compensation of officers of the United States. In comparing however the provisions of the Acts of Congress with those of our Constitution now in question, we find they are not identical in the language employed. The former were construed to vest in the officer the absolute right to all fees and emoluments actually received by him, until it reached the maximum amount of compensation allowed by the law, and to make him a trustee of the public only, as to the excess received by him beyond that amount. The clause of our constitution, when carefully examined and taken in connexion with the several provisions of the Code, before referred to, we think does not bear such a construction. Besides the rules for construing a statute, are not the same as those by which the Courts are bound, when they come to interpret the meaning of a constitutional provision. The technical rules applicable to the former, have no application to the latter. "The Constitution unlike the acts of our Legislature, owes its whole force and authority to its ratification by the people, and they judged of it by the meaning apparent upon its face, according to the general use of the words employed, where they do not appear to

have been used in a legal or technical sense. *Manly vs. State,* 7 *Md. Rep.,* 147. *State vs. Mace,* 5 *Md. Rep.,* 348.

Applying this mode of construction, it seems to us clear that the 1st section of Art. 10, was designed to fix the rate of compensation of the officers mentioned, at a maximum of $3,000 a year, and to limit them to a ratable part of that "yearly sum," according to the period or portion of the year, during which they may hold the office; and to require them to pay into the treasury the excess received by them beyond such rate of compensation; and consequently that the judgment of the Circuit Court is correct, and ought to be affirmed.

In expressing this judgment, we consider it due to the appellant to say, that his failure to pay into the Treasury the sum claimed, by no means justifies any imputation upon his official honor or integrity. The question was one by no means free from doubt; and though we think he was in error in the construction he put upon the Constitution, its language was not so explicit and free from ambiguity as it might have been.

*Judgment affirmed.*