## CODE REVISION

**REPEAL OF STATUTORY PROVISIONS ALLOWING A CLERK OF COURT AND REGISTER OF WILLS TO COMPLETE UNFINISHED BUSINESS AFTER LEAVING OFFICE WOULD NOT EFFECT A SUBSTANTIVE CHANGE IN THE LAW**

October 31, 2013

*Susan H. Russell*
*Manager, Code Revision Projects*
*Department of Legislative Services*

In connection with the ongoing code revision process, you have requested our opinion on whether subsequent legislative enactments have rendered obsolete two statutory provisions— Article 36, §§ 8 and 9 of the Annotated Code of Maryland—that allow a clerk of court or register of wills who has left office six months in which to complete any unfinished business. You ask whether the two provisions may be repealed without effecting a substantive change in the law.

In our opinion, these provisions have been rendered obsolete by the subsequent enactment of § 2-103 of the Courts Article, which allocates responsibility for the completion of unfinished business to the incoming clerk or register, and by other enactments that alter the manner in which clerks and registers are compensated. Accordingly, we conclude that Article 36, §§ 8 and 9 may be repealed without effecting a substantive change in the law.

## I

## Background

### A.   *Article 36, Sections 8 and 9*

Sections 8 and 9 of Article 36[1] address the responsibility for the completion of official matters left unfinished when a clerk or register leaves office. The two provisions were enacted in 1844 in response to reports that "many of the clerks of county courts

---

[1]   Unless noted otherwise, all references to Article 36 are to the 2010 Replacement Volume and all references to the Courts Article are to the 2013 Replacement Volume.

and registers of wills lately appointed,[2] upon taking possession of their officers [sic], have found much of the business of their offices in an unfinished state, which it was the duty of their predecessors to have completed." *See* 1844 Md. Laws, ch. 311. The legislation was enacted to resolve "doubt[s]" about "whether said newly appointed officers are legally authorized to complete such unfinished business, or whether the retiring officers have authority to complete the same." *Id.*

As originally enacted, the statute required the newly appointed officer to "complete the business of his office of every description left unfinished by his predecessors" and authorized him to "recover for completing the same, the fees allowed by law for such business at the time of such neglect by the old officers." *Id.*, §§ 1, 2. The law delayed the operation of its provisions for six months after the departing officers had "vacated their respective offices" and, during that time, gave them "a right to all needful papers in order to enable them to complete and finish their business . . . ." *Id.*, § 3. As currently codified,[3] Article 36, § 8 provides:

> Each clerk and register of wills shall have six months from the time he retires from office to complete the unfinished business of his office and shall have, during that period, a right, on receipting therefor to his successor, to all needful papers, in order to enable him to complete and finish his business.

Article 36, § 9, also in its current form, allows the incoming official to complete any work of his predecessor left unfinished

---

[2] At the time Article 36, §§ 8 and 9 were enacted, clerks and registers were appointed. Both offices became elective under the 1851 Constitution. *See* Md. Const., Art. IV, §§ 14, 18 (1851); *see generally Baltimore v. State*, 15 Md. 376, 456-57 (1860).

[3] The provisions were initially codified at Article 38, §§ 7 and 8, but were moved to their current location within Article 36 during the 1888 re-codification. Other than changes in capitalization and punctuation, the only amendment of the provision occurred in 1878. That amendment deleted language referring to the predecessor's "legal representative" and made clarifying changes not relevant here. *Compare* 1878 Md. Laws, ch. 229 *with* 1844 Md. Laws, ch. 311.

after the six-month hold-over period described in § 8 and to be paid by his predecessor for doing so:

> Each clerk and register of wills on coming into office shall complete all the unfinished business which shall be in his office unfinished by his predecessor within the six months given in § 8, and such clerk or register shall be allowed the usual fees for so doing, the same to be paid by said predecessor; and the last official bond of said predecessor shall be responsible for the same in cases where said predecessor has received the fees therefor; and in cases where the fees have not been received by his said predecessor, such clerk or register completing said business shall be entitled to said fees therefor and shall collect the same from the parties owing the same in the like manner that he collects other fees for similar services.

At the time the two provisions were enacted, the clerks of the circuit courts and the registers of wills were "feed officers," meaning that they drew their compensation from the fees they collected in the course of their official duties. *See*, *e.g.*, 1826 Md. Laws, ch. 247, §§ 4, 6 (setting the fees that the clerks and registers could collect for services rendered "in virtue of their respective offices"); 1844 Md. Laws, ch. 312 (authorizing the continued collection of fees by clerks and registers). The fees that the clerks were authorized to collect ranged from filing fees, fees for issuing writs, and fees for other services relating to the administration of the judicial process, to fees for performing other, essentially non-judicial duties, including the issuance of business licenses. *See* 1826 Md. Laws, ch. 247, § 4. The registers were authorized to collect fees for a variety of tasks associated with the probate of wills and the administration of the orphans' courts. *Id*., § 6.

The clerks and registers were not the only feed officers at the time; as of 1851, *all* State officers other than the Governor were paid from the fees of their office. Dan Friedman, *The Maryland State Constitution: A Reference Guide* 265 (2006) ("Friedman"). The fees that the clerks and registers charged, however, appear to have caused "great complaint among the people of the counties" as of 1851 and had generated more animosity to the existing Constitution "than almost any other abuse." 2 *Debates and*

*Proceedings of the Maryland Reform Convention to Revise the State Constitution* 357 (1851) ("*1850 Debates*").

Although the Legislature had attempted to regularize the "vague and indefinite" fees that the clerks and registers were allowed to charge for each service, 1826 Md. Laws, ch. 247, there remained room for differences in how the fees were applied, and considerable difference across jurisdictions in the amount of fees generated. For example, one delegate to the 1850 Constitutional Convention noted that the register of wills in Somerset County earned $1,500 in fees, while the same position in Baltimore City "receive[d] five times the compensation." 2 *1850 Debates* 357. The office of clerk in Baltimore County, for its part, was believed to be "worth about six thousand a year." *Id*. By comparison, the "Chief Justice of the State" and "the Judges of the State" earned $2,500. *Id*. at 729. At the time, then, the offices of clerk and register in some jurisdictions had become sinecures and valuable ones at that.

Giving public officials a vested interest in the fees they collected may have encouraged efficiency in their work—as some delegates to the 1850 Constitutional Convention appear to have believed, 2 *1850 Debates* 358 (remarks of Mr. Morgan)—but it also encouraged disputes over the collection of, and entitlement to, those fees. *See, e.g., Beall v. Harrison*, 9 G & J 15 (1837) (action by clerk of court to obtain fees collected by sheriff). Article 36, §§ 8 and 9 were enacted to resolve "doubt[s]" about how the transition between the two officers would unfold and to ensure that it unfolded without litigation, a lapse in service, or an inequitable allocation of fees.[4] The provisions thus address two

---

[4] The enactment of the 1844 provisions did not resolve all uncertainty about the entitlement to fees and disputes continued to arise. *See State ex rel. Longnecker v. Carman*, 27 Md. 706 (1867) (rejecting successor clerk's suit for *pro rata* payment of fees for completing work left unfinished by predecessor because successor had not completed all such work before filing suit); *see also* 5 *Opinions of the Attorney General* 232 (1920) (departing register may, during the six-month period following his departure, collect fees that had accrued during his term of office); 12 *Opinions of the Attorney General* 45 (1927) (departing clerk may collect only the actual expenses of completing unfinished work, not his constitutional salary); 16 *Opinions of the Attorney General* 93 (1931) (fees collected by departing register during six-month period may be counted toward making up deficit in previous year's salary).

separate, but closely related, topics: (1) the responsibility for the completion of any unfinished business when a clerk or register leaves office; and (2) the compensation of the official who performs that work.

### B. Subsequent Legislative Enactments Governing the Responsibilities and Compensation of Clerks and Registers

Subsequent legislative enactments have altered the manner in which clerks and registers are compensated and have reallocated responsibility for the completion of business left unfinished at the end of the officer's term.

### 1. Changes in How Clerks and Registers Are Compensated

Just seven years after the law that is now Article 36, §§ 8 and 9 took effect came the first in a series of constitutional and statutory enactments that changed the way in which the registers of wills, and particularly the clerks of the circuit courts, are compensated. The Constitution of 1851 contained two new provisions relating to the salaries of public officers, one specific to clerks and registers and the other more generally applicable to officers who received compensation in excess of $3,000. Article III, § 40 retained the clerks' and registers' status as feed officers, but capped their salaries at $2,500 over and above expenses and directed the Legislature to "adopt some simple and uniform system of charges" for the two offices.[5] Article X, § 1 applied to all officers, "the Governor excepted," whose "pay or compensation received" exceeded $3,000 per year. That new provision required any such officer to account annually for the "sums of money received by him or on his account as a payment of compensation for his performance of official duties" and to "pay over to the treasurer" the amount by which receipts exceeded $3,000—effectively capping the compensation of any such officer at $3,000. *See Picking v. State*, 26 Md. 499, 502-03 (1867) (noting that Art. X, § 1 of the 1851 Constitution was designed to ensure that the fees an officer collected did not "exceed what would be a fair and reasonable compensation," and instead would be used to "increase the public revenue").

---

[5] The General Assembly fulfilled its constitutional charge and the next year enacted legislation setting the fees the clerks and registers could charge. 1852 Md. Laws, ch. 308.

Because the 1851 Constitution had capped the clerks' and registers' salaries at $2,500, it did not subject them to the same accounting provisions that Article X of that Constitution required for officers that earned $3,000. That form of fiscal oversight was added by statute in 1853 and required the clerks and registers to account to the treasury for the "emoluments" and "expenses" of the office "at least twice in every year," 1853 Md. Laws, ch. 444, § 2, and to "pay into the treasury" the amount by which their net receipts exceeded $2,500. *Id.* § 1; *see also Carman*, 27 Md. at 711 (argument of appellee, describing operation of cap on clerk's compensation). The adoption of the 1867 Constitution made these same accounting and treasury oversight provisions *constitutionally* applicable to clerks and registers by raising the cap on their salaries to $3,000 ($3,500 in Baltimore City).[6] *See* Md. Const., Art. III, § 45 (1867); *see also id.*, Art. XV, § 1 (1867) (requiring the same accounting and fiscal oversight that Article X of the 1851 Constitution had required). The new Constitution reaffirmed, though, that the "compensation of Clerks, Registers, assistants and office expenses shall always be paid out of the fees, or receipts of the offices, respectively." *Id.*, Art. III, § 45.

The next notable change to the clerks' and registers' compensation came in 1942, when Article III, § 45 was amended to eliminate the $3,000 cap on the salaries of the clerks and registers and give the General Assembly the power to set those salaries. *See* 1941 Md. Laws, ch. 509 (ratified Nov. 3, 1942). Then, in 1956, Article XV, § 1 was amended to remove the generally applicable $3,000 limit on the amount that feed officers could retain as compensation for their duties, leaving it to the Legislature to set such compensation by statute as well. 1956 Md. Laws, ch. 99 (ratified Nov. 6, 1956).

The changes wrought by these various constitutional provisions eliminated the pecuniary incentive for the clerks and registers to maximize the profits of their offices and instead made both offices subject to substantial legislative and fiscal oversight. Both offices nevertheless remained "feed" offices in that their fixed salaries were paid using the fees collected by their offices.

---

[6] The more generous $3,500 salary available to the clerk and register in Baltimore City was an example of the exception to the $3,000 cap in Article XV, § 1, applicable to "cases specially provided in this Constitution." Md. Const., Art. XV, §1 (1867); *see Thrift v. Laird*, 125 Md. 55, 66 (1915).

For the registers, this change was reflected in statute and, for the clerks, in the Constitution. *See* 68 *Opinions of the Attorney General* 96, 104 (1983). As of 1957, § 302 of Article 93 provided that the legislatively-fixed salaries of the registers "shall be payable semimonthly from the fees, receipts and emoluments of the office, after first deducting therefrom the necessary expenses of the office . . . ." From these receipts the registers paid the expenses of doing business, including their own salaries and those of their employees. In the event of a shortfall, the deficiency would be paid "by the Comptroller from funds provided for that purpose in the State budget." Md. Ann. Code art. 93, § 302(b) (1957).[7] Therefore, registers, although paid using money earned from fees, earned a fixed salary no matter how much money their offices collected.

The clerks remained feed officers until 1986, when changes to Article IV, § 10 freed them from fee dependency and provided for the funding of their offices through the State budget, rather than by means of their revenues. *See* 1986 Md. Laws, ch. 722 (ratified Nov. 4, 1986). Specifically, the amendment deleted the provision that the clerks would be "allowed the fees" they collected. Instead, Article IV, § 10 provided, as it does today, that "[t]he offices of the Clerks shall be funded through the State budget." Under current law, "[a]ll fees, commissions, or other revenues established by Law for [the clerks'] offices shall be State revenues, unless provided otherwise by the General Assembly." Md. Const., Art. IV, § 10 (2003 Repl. Vol.); *see also generally* 72 *Opinions of the Attorney General* 21 (1987) (describing 1986 amendments). Each clerk must now submit an annual budget to the Chief Judge of the Court of Appeals for the Chief Judge's approval and submission to the Department of Budget and Management as part of the overall budget for the Judiciary. Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 2-504.1.

---

[7] More recent legislation has altered the manner in which the register's salary is covered when the fees collected are insufficient to do so. *See, e.g.*, 1969 Md. Laws, ch. 3 (providing that any shortfall in the register's fees was to be covered by the "taxes due the State Comptroller from said office for that month," and if that amount were insufficient, "from funds provided in the State Budget for this purpose"). The statute took its current form in 1999 and now provides that, if the "taxes due the State Comptroller" are not enough to cover the register's salary and expenses, the shortfall is covered "from excess fees remitted from all other registers." 1999 Md. Laws, ch. 635 (now codified at Md. Code Ann., Estates & Trusts ("ET") § 2-205(e)(2) (2011 Repl. Vol.).

The Registers, by contrast, technically remain "feed" officers—the only ones, in fact. *See* Friedman at 265.

### 2. Changes in the Responsibility for the Completion of Unfinished Business

Legislation subsequent to the enactment of Article 36, §§ 8 and 9 in 1844 has also altered the allocation of official duties during times of transition within the offices of the clerk and the register. Most notably, § 2-103 of the Courts Article, added in 1973 when the Article was codified, provides that, "[w]hen an officer leaves office for any reason, any duty not fully performed, including the collection of fees, becomes the responsibility of his successor in office." *See* 1973 Md. Laws, ch. 2 (1st sp. sess.).

The revisor's note that accompanied § 2-103 explained that the provision was "new language designed to replace the provisions . . . which provide that when an officer leaves office for any reason except death, his successor shall finish any work in progress."[8] The provisions that the revisor's note stated should be

---

[8]  The full text of the revisor's note is as follows:

> This section is new language designed to replace the provisions (such as Art. 87, §§ 21-25, 33-34, and 36) which provide that when an officer leaves office for any reason except death, his successor shall finish any work in progress. Sections 21-25, 33-34, and 36 of Art. 87 are proposed for repeal. When an officer dies however, his duties devolve on his personal representative. There is no reason to involve a personal representative in what are, in reality, public duties.

> An officer, while he is in office, is personally responsible for carrying out the duties of his office, whether or not the duties accrued during his term or the term of his predecessor. An officer who fails to carry out his duties may be proceeded against on his bond.

> Although the provisions on which this section is based originally applied only in the case of sheriffs, the section is expanded to negate any implication that the personal representative of any other officer may be responsible for completing unperformed duties.

1973 Laws, ch. 2 (1st sp. session).

replaced included §§ 33 and 36 of Article 87, which, much as Article 36, §§ 8 and 9 do for clerks and registers, gave retiring sheriffs a period of time after their terms expired in which to collect any outstanding fees, Art. 87, § 33, and gave them a "right, on receipting therefor, to the temporary possession of all needful papers in order to enable him to complete the collections . . . ."[9] Art. 87, § 36 (1969 Repl. Vol.). The code revision committee noted that, although the provisions on which the newly enacted § 2-103 is based "originally applied only in the case of sheriffs, the section is expanded to negate any implication that the personal representative of any other officer may be responsible for completing unperformed duties." 1973 Laws, ch. 2 (1st sp. sess.). The implication arose from a third provision, Art. 87, § 34, which had provided that, if the sheriff should die in office, "his administrator may collect all fees placed in the hands of such sheriff for collection, in the same manner and by the same means as said sheriff might have done in his lifetime" for a period of two years. Believing that "[t]here is no reason to involve a personal representative in what are, in reality, public duties," the code revision committee recommended replacing the three provisions with a single provision, applicable to all offices, that would assign the unfinished business of the departing officer to his or her successor.

## II

### Analysis

As a general rule, code revision is presumed to be for the purpose of clarity rather than for the purpose of changing the substance of statutory law. *Addison v. Lochearn Nursing Home*, 411 Md. 251, 282 (2009). You have therefore asked whether Article 36, §§ 8 and 9 may be repealed without effecting a substantive change in the law, in light of subsequent enactments governing the responsibilities and compensation of the clerks and registers.

---

[9] The committee noted that § 2-103 was also intended to supersede §§ 21-25 of Article 87, which addressed the disposition of any writs, process, or property sales left incomplete upon a sheriff's death or departure from the jurisdiction. Although § 25 provided a role for the "sheriff for the time being," none of the provisions addressed the authority of a succeeding sheriff to complete work left unfinished by his predecessor or collect fees therefor.

As we see it, the determination of whether a statute may be repealed through the code revision process involves two concepts—obsolescence and substantive change—that are closely related, but not identical. An earlier statute may be rendered obsolete by a later, more comprehensive legislative approach to a topic, and yet specific aspects of the earlier statute may fall outside the later enactment's legislative footprint such that the repeal of those aspects would constitute a substantive change in the law. For example, we previously concluded that certain provisions regarding the holding of open meetings, enacted in 1954, had been rendered largely obsolete by the enactment of the Open Meetings Act in 1977, but that the provision of the older law requiring that "no ordinance, resolution, rule or regulation shall be finally adopted at [a meeting not open to the public]" had no analog in the new Act and therefore could not be repealed without effecting a substantive change in the law. *See* 94 *Opinions of the Attorney General* 161, 175-76 (2009). As we did then, we begin our analysis by identifying the each aspect of the earlier enactment and ascertaining whether those aspects have been squarely superseded by subsequent enactments.

Article 36, §§ 8 and 9 address two closely related topics: (1) the allocation of responsibility for the work of the clerks and registers during the transition between office-holders; and (2) the allocation of fees between the preceding or succeeding officeholder. In our view, both topics have been addressed by subsequent enactments that have rendered Article 36, §§ 8 and 9 obsolete.

### A. The Provisions of Article 36, §§ 8 and 9 Relating to the Completion of Unfinished Business Have Been Rendered Obsolete by § 2-103 of the Courts Article.

Where the 1844 provisions allowed clerks and registers six months from the date of their departure in which to complete any unfinished business, § 2-103 of the Courts Article now makes clear that the responsibility for any such business lies with the successor: "When an officer leaves office for any reason, any duty not fully performed, including the collection of fees, becomes the responsibility of his successor in office." *Id.* The term "officer," although not defined in the Courts Article, encompasses the clerks and registers, both of whom hold offices within the Judicial Branch created by Article IV of the Constitution. *See* Md. Const., Art. IV, §§ 11 (referring to "Clerks, Registers of Wills, and other officers"), *see also id.*,

§§ 10, 41 (providing for clerks and registers, respectively); 98 *Opinions of the Attorney General* 23 (2013) (describing the relationship between clerks and registers within the Judicial Branch).[10]

The revisor's note accompanying § 2-103 does not mention the clerks or registers but nonetheless supports the conclusion that § 2-103 was intended to supersede the provisions of Article 36, §§ 8 and 9. Although, as discussed above, the change effected by § 2-103 was prompted by earlier provisions relating to the collection of fees by the personal representatives of sheriffs, the revisor's note expressly states that the committee had "expanded" the provision to be applicable to "any other officer . . . ." CJP § 2-103 (1974 Vol.).

The report that accompanied the code revision committee's recommendations confirms that the "new language" it recommended would apply to the clerks and, we believe, to the registers as well. As to the clerks, the committee's reasoning was explicit:

> The rationale for the present statutory provisions is that in former times the fees of a clerk or sheriff were his compensation, and when he died, uncollected fees became a part of his estate. These officers are now salaried and derive no personal benefit from the fees they collect.

---

[10] No provision within Title 2 of the Courts Article (entitled "Court Personnel") mentions the registers, but other provisions of the Courts Article do. *See* CJP §§ 11-203 (providing for bonds for clerks and registers), 12-502(b)(1) (appeals from orphans' court filed with register). That more attention is not paid to the registers in the Courts Article appears to be due to the fact that the code revision committee elected to place some judicial officers—including the orphans' court judges, whom the registers support—in other articles "[b]ecause of their very limited jurisdiction." Governor's Commission to Revise the Annotated Code, *Commission Report No. 3F to the General Assembly of Maryland* at 6 (July 16, 1973) ("*1973 Code Revision Committee Report*"); *see also* 98 *Opinions of the Attorney General* 23 (discussing the Estates and Trusts Article provisions on registers and orphans' court judges).

1973 Code Revision Committee Report at 18.[11]   Although the report does not mention the registers, they were, and remain, compensated in the same way that clerks were compensated in 1973:   They derive their compensation from fees, but that compensation takes the form of a legislatively established salary. The two officers also play similar roles with respect to the courts they support.   *See* ET § 2-208(e)[12] (stating that the register "in every respect, [shall] act under the control and direction of the [orphans'] court as the clerk of a court of law acts under the direction of the court of law").   The Legislature treats clerks and registers together in other ways as well—the enactment of Article 36, §§ 8 and 9 is a case in point—as does the Constitution.   *See* Md. Const., Art. III, § 45 (requiring the General Assembly to "provide a simple and uniform system of charges in the offices of Clerks of Courts and Registers of Wills").   In sum, the language and logic of the code revision lead us to conclude that § 2-103 applies to all judicial officers, including clerks and registers.[13]

---

[11] One of the members of the code revision committee echoed the committee's remarks in a contemporaneous law review article: "Heretofore, when a sheriff died or otherwise left his office, statutes of ancient origin required cumbersome procedures to be followed.  Some of these provisions authorized the former sheriff or his person representative to collect fees after the sheriff left office or died; this arrangement was quite appropriate when the sheriff was compensated by his fees, but it is totally inappropriate today, when all sheriffs are salaried."  William H. Adkins, II, *Code Revision in Maryland:   The Courts and Judicial Proceedings Article*, 34 Md. L. Rev. 1, 19 (1974) (footnotes omitted).

[12] All references to the Estates and Trusts Article are to the 2011 Replacement Volume.

[13] *See also* 1973 Code Revisions Committee Report at 17 (stating that § 2-103 "has been expanded to apply to all officers" and "makes clear that although an officer is personally responsible for his official duties while he holds office, this responsibility ceases when he leaves office, and it becomes the responsibility of his successor to complete any carry over work"); Adkins, 34 Md. L. Rev. at 18-19 (stating that the "focus" of the newly enacted § 2-103 was "[r]eplacement of obsolete provisions in the Code," and that "Section 2-103 makes it clear that when any officer covered by title 2 leaves office for any reason, all duties then unperformed, including collection of fees, devolve upon his successor").

Typically we will not assume that a code revision committee intended to make what might be considered a substantive change in the law when re-codifying an existing statute. However, we think the committee report describing the 1973 code revision process makes clear that the committee intended to recommend this potentially substantive change:

> The basic thrust of the Commission's work has to do with formal and not substantive changes. Nevertheless, at some points in its work, the Commission has found it necessary to make recommendations which do involve the substance of the laws. In a sense, the elimination of an obsolete provision is a substantive change. Also, where the Commission has discovered inconsistencies or gaps in the laws, it has sometimes made substantive recommendations in an effort to rectify the situation . . . .
>
> In every such case, the revisor's notes following the particular section explain the change and the reason for it.

1973 Code Revision Committee Report at 3. The revisor's note suggests that § 2-103 is one such section; it describes the provision as "new language" that is being "expanded" beyond existing law. Thus, we believe that the code revision committee intended to recommend a new statutory principle.

In our view, then, the 1973 codification of the Courts and Judicial Proceedings Article effected a substantive change that brought up to date, and made uniform, the law governing the allocation of responsibility for the unfinished work of the sheriffs and any other judicial officer, including clerks and registers. The declaration that, "[w]hen an officer leaves office for any reason, any duty not fully performed, including the collection of fees, becomes the responsibility of his successor in office," CJP § 2-103, leaves no room for the contrary provisions of Article 36, §§ 8 and 9 relating to the completion of "unfinished business."[14]

---

[14] We recognize that Article 36, §§ 8 and 9 relate specifically to clerks and registers, not officers generally, and that canons of statutory interpretation favor the specific statutory provision over the general. *Maryland Econ. Dev. Corp. v. Montgomery County*, 431 Md. 189, 212

### B. The Provisions of Article 36, §§ 8 and 9 Relating to the Compensation of Clerks and Registers for the Completion of Unfinished Business Have Been Rendered Obsolete By § 2-103 of the Courts Article and Other Changes in How the Two Officers Are Compensated

We next evaluate whether subsequent legislative enactments have rendered obsolete the provisions of Article 36, §§ 8 and 9 relating to compensation for the completion of any business left unfinished at the end of the clerk or register's term. As discussed above, those earlier provisions allowed a departing clerk or register to continue to collect fees that accrued during a six-month, post-departure, winding-up period, and entitled the succeeding clerk or register to demand from his or her predecessor fees collected for work that, at the end of the six-month period, was left undone. *See supra* at Section IA.

In our view, the enactment of § 2-103 of the Courts Article superseded the compensation provisions of Article 36, §§ 8 and 9 in the same way that it rendered obsolete the winding-up provisions of the earlier law. The right to compensation granted by §§ 8 and 9 is limited to, and bound up with, the opportunity for the departing clerk to complete any unfinished business. Because that opportunity has now been foreclosed by the enactment of § 2-103, the accompanying right to compensation is extinguished as well.

Subsequent changes in how the clerks and registers are compensated reinforce our conclusion that the earlier compensation provisions have been rendered obsolete. With respect to the clerks, the 1986 amendments to Article IV, § 10 deleted the language providing that the clerks would be "allowed the fees" and specified instead that "[a]ll fees, commissions, or other revenues" collected by the clerks are considered "State

---

(2013). Of course, a competing canon provides that irreconcilable statutes "are to be made to operate together as far as possible, consistent with the evident intent of the *latest enactment*." *May v. Warnick*, 227 Md. 77, 83 (1962) (emphasis added); *see Unnamed Physician v. Commission on Medical Discipline*, 285 Md. 1, 10 (1979) (quoting *May*). In any event, interpretive canons must yield to a contrary legislative intent, *see NCR Corp. v. Comptroller of Treasury, Income Tax Div.*, 313 Md. 118, 145-46 (1988), which intent we believe the revisor's note to § 2-103 reflects.

revenues, unless provided otherwise by the General Assembly."[15] Md. Const., Art. IV, § 10(b); *see also generally* 72 *Opinions of the Attorney General* 21 (1987) (describing 1986 amendments). Because those amendments extinguished the clerk's right to compensation from the fees of the office, the repeal of the provisions of Article 36, §§ 8 and 9 relating to the clerk's compensation would not effect a substantive change in the law for this reason as well.

The office of the register of wills, though it remains a "feed" office, is not the sinecure that it was when Article 36, §§ 8 and 9 were enacted. Subsequent legislative enactments set the register's salary, required periodic accountings, and provided for any fees collected in excess of the register's salary to be turned over to the treasury, ultimately for disposition within the State budget. Under current law, it does not matter whether the fees are collected by the departing register or the new one; the fees go to the same place and the registers draw the same salary. Although these enactments do not change the fact that the register is paid from the fees collected, they are consistent with our conclusion that repealing Article 36, §§ 8 and 9 would not effect a substantive change in the law.[16]

---

[15] We have found no subsequent legislative enactment providing that the "fees, commissions, or other revenues" collected by the clerks are not considered "State revenues." Section 2-213 of the Courts Article, though it provides that "the clerk of a circuit court is entitled to 5% of all public money that the clerk receives, collects, and pays over," is not to the contrary. Although the commissions allowed by the provision were originally intended to help fund the clerk's salary and the expenses of running the office, those commissions are now remitted to the Treasurer and "serve to compensate the State for the services performed by these State officials in collecting public moneys that are distributed to governmental entities other than the State." Letter of Assistant Attorney General Julia M. Freit to Stephen M. Ports, Dep't of Fiscal Services (July 5, 1996).

[16] In addition to unfinished work and compensation, Article 36, § 8 arguably addresses a third topic as well—the departing official's "right, on receipting therefor to his successor, to all needful papers, in order to enable him to complete and finish his business." We believe the "right" to access conferred by § 8 serves only the purpose of enabling the departing officer to comply with the § 8 duty to complete any unfinished business within six months. *See Carman*, 27 Md. at 714 (noting that what is now § 8 gives the departing clerk "the right of possession (on receipting for the same) to all needful papers to enable him to finish his business"). As we have concluded that the provisions

## III

## Conclusion

Article 36, §§ 8 and 9 have been rendered obsolete by subsequent enactments that allocate responsibility for the completion of unfinished business to the incoming clerks and registers and that alter the manner in which clerks and registers are compensated for their service.  Accordingly, we conclude that Article 36, §§ 8 and 9 may be repealed without effecting a substantive change in the law.

Douglas F. Gansler
*Attorney General*

H. Scott Curtis
*Assistant Attorney General*

Adam D. Snyder
*Chief Counsel, Opinions & Advice*

---

of Article 36, §§ 8 and 9 relating to that duty have been and may be repealed without effecting a substantive change in the law, any "right" to gain custody of "needful papers" in order to carry out that responsibility falls by the same standard.  At the very least, such a "right" would seem inconsistent with the current clerk's obligation to "[h]ave custody of the books, records, and papers of his office," CJP § 2-201(a)(1), and the register's obligation, not only to "store safely every original paper and record left in his custody," ET § 2-208(c), but to ensure that "[a]ny will, probated, or any paper filed in the office of the register [is] not . . . delivered out of the office to any person."  ET § 2-209.